**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RACHAEL A. CLINE, | ) | CASE NO. 5:24-CV-01003-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

**I. Introduction**

Plaintiff, Rachel A. Cline (" Cline" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the District Court REVERSE the Commissioner's decision, and REMAND this matter for additional proceedings consistent with this Report and Recommendation.

**II. Procedural History**

On January 17, 2019, Cline filed applications for DIB and SSI, alleging a disability onset date of October 15, 2018. (ECF No. 7-5, PageID #:1938, 1942). The applications were denied initially and upon reconsideration, and Cline requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7-4, PageID #:1695). On July 28, 2020, an ALJ held a hearing, during which Cline, represented by counsel, and an impartial vocational expert testified. (ECF No. 7-2, PageID #:1500). The ALJ determined that Cline was not disabled. (ECF No. 7-3, PageID #:1630).

1

Cline timely appealed to the Appeals Council, and by Notice of Order dated August 22, 2022, the Appeals Council remanded Cline's case back to the ALJ for a new hearing and directed the ALJ to provide analysis of the opinion of Dr. W.S. Stine, to reconsider the effects of a prescribed cane, and to reconsider Cline's maximum residual functional capacity in light of these directions. (ECF No. 7-3, PageID #:1654–58). On May 9, 2023, the ALJ held a new administrative hearing (ECF No. 7-2, PageID #: 1372) and issued a new decision on June 21, 2023 (ECF No. 7-2, PageID #: 412), again denying all benefits to Cline. Cline timely filed an Administrative Request for Review of the ALJ's decision. The ALJ's decision became permanent on April 8, 2024, when the Appeals Council declined further review. (ECF No. 7-2, PageID #: 37).

On June 12, 2024, Cline filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8, 10, 11). Cline asserts the following assignments of error:

(1) The ALJ violated 20 C.F.R. § 404.1520c when evaluating the opinion evidence.

(2) The ALJ failed to address whether Ms. Cline's assistive device was medically necessary to maintain balance.

(ECF No. 8).

**III. Background**

    **A. Relevant Hearing Testimony**

        **1. Claimant's Testimony**

At her administrative hearing, Cline testified that she lives with her parents and her two children, aged eight and five.[1] (ECF No. 7-2, PageID #: 1378–79). She has her driver's license and can drive but often has other people drive her due to her vision and leg troubles. (*Id*., PageID #:

---

[1] One of Cline's children lives with her full time.

1379). Cline has a high school diploma and has completed some associate courses. (*Id*., PageID #: 1380). Cline testified that she has been unable to work since October 2018 because that is when she was diagnosed with multiple sclerosis and was having trouble seeing. (*Id*., PageID #: 1382). Cline testified that she uses a cane "as much as possible" to help her balance, but that she also "furniture walks" or "counter walks" at work to get around. (*Id*., PageID #: 1383). She is able to lift twenty pounds comfortably. (*Id*.). Cline testified that she can stand for twenty minutes before needing to sit down, she can walk around the block with assistance, and she can sit for thirty or forty minutes at a time. She grocery shops but cannot do laundry or run a sweeper. Cline testified that her hands get stiff and achy which causes her to drop items. (*Id*., PageID #: 1389–90). Cline uses medical marijuana to alleviate her migraines and body aches. (*Id*.).

### 2. Testimony of the Vocational Expert

The ALJ asked the vocational expert whether jobs were available in the national economy for an individual with the following limitations:

> Claimant's age and education with no past relevant work. Further assume this individual can perform sedentary work. She can occasionally climb ramps and stairs and never climb ladders, ropes and scaffolds. She can occasionally stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme heat, extreme cold, loud noise, and lighting brighter than the typical office environment. She should avoid exposure to danger, moving machinery and unprotected heights. and carry out simple instructions. She can understand, remember She cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. She can deal with occasional changes in a routine work setting. She can have occasional interaction with supervisors, coworkers and the general public. She should not perform tasks requiring arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety or welfare of others.

(ECF No. 7-2, PageID #: 1396). The vocational expert opined that the hypothetical individual would be able to perform the work of a "polisher, DOT 713. 684-038, unskilled, SVP of 2, sedentary exertion, with approximately 20,000 positions in the national economy. Could do that

of a document preparer, DOT 249.587-018, unskilled, SVP of 2, sedentary exertion, with approximately 20,000 positions in the national economy. Could do that of an inspector, DOT 669.687-014, unskilled, SVP of 2, sedentary exertion, with approximately 5,000 positions in the national economy." (*Id.*). The ALJ then added to the hypothetical that the individual requires a cane for ambulation and asked whether the same jobs would remain available. (*Id.*). The vocational expert said that using a cane for ambulation would preclude the position of document preparer and substituted that with the position of an addresser, for which there are approximately 5,000 positions in the national economy. (*Id.*, PageID #: 1397–98). Another available position, the vocational expert opined, would be that of a ticket checker, which has approximately 25,000 positions in the national economy. (*Id.*, PageID #: 1398).

### B. Relevant Medical Evidence

The ALJ summarized Cline's health records and symptoms:

The clamant has described multiple falls (B4E/1), fatigue and imbalance (B32F/2), which she ascribes to multiple sclerosis (B6A/2), with generalized joint and muscle pain (B4F/1), which she ascribes to fibromyalgia (B6A/2), as well as severe headaches (B4E/1), all causing deficits of her ability to lift, squat, bend, stand, walk, kneel, and climb (B4E/6). She has reported chronic anxiety and depression (B6A/2), causing deficits of her ability to concentrate, complete tasks, employ her memory, get along with others (B4E/6), and react appropriately to stressors or changes (B4E/7).

In terms of the claimant's alleged obesity, she registered a body weight of 282 pounds on October 30, 2018 (B2F/7), which corresponds to a body mass index in excess of forty-five. In turn, this is consistent with a body weight of 320 pounds, recorded on November 18, 2020 (B38F/3), and a body weight of 339 pounds, recorded on February 9, 2023 (B52F/54). Although no direct medical evidence indicates that the existence of this impairment causes the claimant excess fatigue, or unduly restricts her ability to move about freely within the workplace, I nevertheless identify this impairment as severe for its contributory effects, potentially marked, on the claimant's other severe impairments, particularly those affecting her weight bearing, musculoskeletal system.

Although the claimant was diagnosed with osteoarthritis of the bilateral knees, and

radiographic study of the right knee, dated January 25, 2019, indicated small, lateral compartment osteophytes, that radiograph was otherwise unremarkable (B7F/10). Consideration of the record as a whole confirms my impression that the existence of this impairment would not be preclusive of all types of work.

Radiographic study of the left knee, dated March 19, 2021, was unremarkable (B40F/177).

The claimant has followed a regimen of prescription medications discernibly addressed to this impairment (B2E/5), (B52F/119-123) but not on a chronic basis (B7E/6).

She has not followed up on referral to pain management (B42F/5), and has engaged in no other course of focused treatment for this impairment.

Clinical examinations included in the evidence have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated November 17, 2018, which indicated that the claimant exhibited a functional range of motion, with intact motor and sensory function (B3F/287), one dated October 2, 2020, which indicated good range of motion in all extremities, unremarkable sensory and motor examinations (B40F/83), or one dated February 27, 2023, which indicated a wide-based, cautious, ataxic gait, with normal motor, sensory function and reflexes (B53F/3).

In terms of the claimant's alleged multiple sclerosis, diagnostic imaging of the cervical spine and brain, dated March 5, 2019 (B9F/10) and April 10, 2018 (B3F/186) respectively, described the white matter lesions consistent with multiple sclerosis. In January 2020, diagnostic imaging of the brain (B32F/2) and cervical spine (B32F/1), each described progression of the disease, with new cervical lesion at the C7 vertebral level. Her multiple sclerosis was assessed as relapsing and remitting on July 16, 2020 (B32F/1). While these findings would be consistent with the claimant's allegations of multiple sclerosis, the record, when considered as a whole, is not supportive of the contention that the existence of this impairment would be preclusive of all types of work.

The claimant had been treated for this impairment with infusions of "Glatopa" early in the period relevant to this claim (B2E/5). An attempt to change her medications to "Ocrevus" in April 2019 failed because her insurance would not allow this medication (B2F/5), (B21F/2). By January 2020, the relapse documented on imaging studies caused a re-appraisal and she was started on "Ocrevus" infusions in March or April of 2020 (B32/1), with her first full dose in November 2020 (B38F/1). The claimant had described feeling more stable after starting this medication (B38F/1) and as of August 2022 had had no significant recurrence or relapse while on "Ocrevus" (B46F/7).

Diagnostic imaging of the brain, in March 2022 (B46F/13) and March 2023

(B56F/11-12), describe no significant change to the lesion burden from the January 2020 imaging. Diagnostic imaging of the cervical spine, dated March 27, 2023, indicated no significant change to the lesion burden since January 2020 (B56F/12-13).

The claimant had attended a regimen of physical therapy for her neck and multiple sclerosis between February and April 2019. At its conclusion, she had reported doing much better, overall (B33F/28); however, despite multiple referrals to return (B24F/7), (B32F/5), (B53F/3), she has thus far demurred (B17F/10), (B46F/3).

Clinical examinations included in the evidence have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated November 17, 2018, which indicated that the claimant presented as alert and oriented in four spheres, moving all extremities equally and appropriately, with cranial nerves II-XII intact, with normal speech, no dysarthria or aphasia (B3F/287), one dated October 2020, which indicated good range of motion in all extremities, sensory and motor examinations unremarkable and cranial nerves II-XII intact (B40F/83), or one dated February 27, 2023, which described a wide-based, cautious, ataxic gait, but with normal cranial nerves II-VIII, normal motor strength [five of five] in all extremities, reflexes and sensory function normal, coordination normal, with fluent speech, intact naming and repetition (B53F/3).

In terms of the claimant's alleged chronic headaches, she was diagnosed with headaches on March 8, 2019 (B9F/6). While this finding would be consistent with the claimant's allegations of severe headaches, the record, when considered as a whole, is not supportive of the contention that the existence of this impairment would be preclusive of all types of work.

Although the claimant has reported that her headache has been "just constant" since she left the hospital after the birth of her son (B9F/2-3), there are multiple reviews of symptoms within the record, when she denies headaches (B3F/274, 322), (B14F/37), (B23F/47), (B31F/24), (B40F/51), (B45F/5), (B49F/70), (B49F/31). She has described to other providers that her headaches are intermittent with the last one occurring a month ago (B35F/11).

She has required emergent treatment for headaches on several occasions (B14F/62), (B31F/6), (B40F/120), but the last known visit occurred in June 2021 (B45F/21).

She had attempted infusions for migraine headaches (B18F/17, 19, 21); however, these were ineffective (B18F/23). She describes a better result from the use of medical marijuana (B18F/23).

She follows, and has followed (B2E/5), (B52F/119-123) a regimen of prescription medications intended to address this impairment, used without report of side effects.

6

> Clinical examinations included in the evidence have consistently, albeit not universally, reported either mildly adverse, or benign findings, including one dated November 17, 2018, which indicated cranial nerves II-XII as intact (B3F/287), one dated October 2, 2020, which indicated cranial nerves II-XII as intact (B40F/83), or one dated February 27, 2023, which indicated cranial nerves II-VIII as intact (B53F/3).
>
> In terms of the claimant's alleged fibromyalgia, she was so diagnosed on November 14, 2018 (B4F/4). While this finding would be consistent with the claimant's reports of generalized muscle and joint pain, the record, when considered as a whole, is not supportive of the contention that the existence of this impairment would be preclusive of all types of work.
>
> As medical science has long since satisfied itself that the existence of this impairment works no residual damage to the nerves, muscle, or bones it affects, the standard form of treatment has come to be an increase in exercise and activity. Such is the case here, with providers urging more exercise (B8F/2), including interval training (B17F/10), and her neurologist suggesting a long-term conditioning program (B32F/5). Thus far, the claimant has demurred (B17F/10), (B46F/3), declining physical therapy referrals since the successful (B33F/28) completion of a physical therapy regimen in 2019.
>
> The claimant follows a regimen of the expected prescription therapy, including the nerve conduction suppressant "Gabapentin" (B52F/119-123); however, this use has not been chronic (B2E/5), (B7E/6).
>
> Clinical examinations included in the evidence have consistently, albeit not universally, reported benign findings, including one dated November 17, 2018, which indicated a functional range of motion in the extremities, with motor and sensory function intact (B3F/287), one dated October 2, 2020, which indicated good range of motion in all extremities, with unremarkable motor and sensory examinations (B40F/83), or one dated February 27, 2023, which reported normal motor function, sensory function and reflexes (B53F/3).

(ECF No. 7-2, PageID #: 422–25).

### C. Opinion Evidence at Issue

#### 1. Primary Care Physician - W.S. Stine, M.D. - February 27, 2020

The ALJ summarized the opinion of Cline's primary care physician, W.S. Stine, M.D. as follows:

> The claimant's primary care physician, W.S. Stine, M.D., indicated, on February 27, 2020, indicated [sic] that the claimant could sit for less than two of eight hours,

7

stand and/or walk for less than two of eight hours, would need a fifteen-minute, unscheduled break every few minutes, needs a cane, could reach less than five percent of the workday, could never grasp or turn objects, could engage in fine manipulation 20% of the workday, would be off-task more than 25% of the workday since October 2018.

(ECF No. 7-2, PageID #: 428). The ALJ found Dr. Stine's opinion unpersuasive. (*Id.* at PageID #: 429).

### 2. Neurologist - Timothy Carrabine, M.D. - March 20, 2023

The ALJ summarized the opinion of Cline's neurologist, Dr. Timothy Carrabine, as follows:

The claimant's neurologist, Timothy Carrabine, M.D., indicated, on March 20, 2023, that the claimant could sit for less than two of eight hours, could stand and/or walk for less than two of eight hours, would need an unscheduled break each ten-to-fifteen minutes, could grasp ten percent of the workday, engage in fine manipulation ten percent of the workday, could never reach, would need a cane, would be off-task more than twenty-five percent of the time and absent more than four times per month, since 2018.

(*Id*. at PageID #: 429). The ALJ found Dr. Carrabine's opinion regarding Cline's physical limitations unpersuasive. (*Id.*).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: morbid obesity, relapsing and remitting multiple sclerosis, fibromyalgia, osteoarthritis of the bilateral knees, chronic headaches, major depressive disorder, generalized anxiety disorder, dependent personality disorder and eating disorder, unspecified (20 CFR 404.1520(c) and 416.920(c)). This finding departs from that of the previous decision, in order to account for the severe impairments documented in the current evidence.

(ECF No. 7-2, PageID #: 418).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant may occasionally stoop, kneel, crouch, crawl, climb ramps and stairs but may never climb ladders, ropes, or

8

> scaffolds; the claimant requires the use of a cane for ambulation; the claimant must avoid concentrated exposure to extremes of heat and cold, loud noise and lighting brighter than found in a typical office environment; the claimant must avoid all exposure to unprotected heights and dangerous moving machinery; the claimant is able to understand, remember, and carry out simple instructions and to work in a setting free of specific production rate pace [as is found in assembly line work] or work requiring hourly quotas, which setting is routine, in that it contemplates occasional changes, which setting requires no more than occasional interaction with co-workers, supervisors, or the public, and does not impose tasks involving arbitration, negotiation, confrontation, directing the work of, or bearing responsibility for the safety or welfare of, others. This finding departs from that of the previous decision, in order to accommodate the present state of the impairments, as documented in the current evidence.

(*Id*. at PageID #: 422)(brackets in original).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). This finding adheres to that of the previous decision.

(*Id*. at PageID #: 432).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). Except that this finding recites the alleged onset date for the current claim, it adheres to that of the previous decision.

(*Id.* at PageID #432–33).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

9

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light

of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Cline raises two issues on appeal: 1) that the ALJ committed reversible error in her evaluation of the opinions of Drs. Stine and Carrabine; and 2) that the ALJ committed reversible error by failing to address whether Cline's assistive device was medically necessary to maintain balance. As discussed below, the ALJ did not follow agency procedure when evaluating Cline's need for a cane as opined by Drs. Stine and Carrabine. Thus, this Court recommends that Cline's second assignment of error to be well taken. Thus, the Court need not resolve the alternative basis that Cline asserts supports reversal and remand. *See Bailey v. Comm'r of Soc. Sec.*, No. 4:23-CV00696, 2023 WL 8751127, at *15 (N.D. Ohio Dec. 14, 2023), *report and recommendation adopted*, No. 4:23-CV-00696, 2023 WL 8789604 (N.D. Ohio Dec. 19, 2023); *Higginbotham v. Comm'r of Soc. Sec.*, No. 1:23-CV-1526, 2024 WL 2000570, at *9 (N.D. Ohio Apr. 16, 2024), *report and recommendation adopted sub nom. Higginbotham v. Comm'r of Soc. Sec. Admin.*, No. 1:23-CV-01526, 2024 WL 1996425 (N.D. Ohio May 6, 2024). Nevertheless, on remand, the ALJ

may consider Cline's additional arguments if appropriate. *See Joanne L. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2051, 2022 WL 16757031, at *6 (S.D. Ohio Nov. 8, 2022).

In her second issue, Cline argues that the ALJ failed to properly address whether her assistive device was medically necessary to maintain balance. Cline argues that this failure is reversible error because by failing to include a limitation for the use of a cane for balance the vocational expert was not asked to opine as to whether jobs existed for a person with Cline's limitations. The Commissioner argues that the ALJ adequately addressed Cline's balance and gait difficulties and Cline failed to provide medical documentation establishing the medical necessity of a cane and "describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)," as required under Social Security Ruling ("SSR") 96-9p. (ECF No. 10 at 12). This Court agrees with Cline.

To find that a hand-held assistive device is "medically required", SSR 96-9p requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." *Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9p (S.S.A. July 2, 1996), 1996 WL 374185. The need for a hand-held assistive device is not disabling in and of itself. "[T]he point of the 'medically required' test in SSR 96-9p is to identify those situations when the set of sedentary jobs is reduced by use of a hand-held assistive device." *See Palmer v. Comm'r of Soc. Sec.*, No. 19-CV-11020, 2020 WL 5209358, at *4 (E.D. Mich. Sept. 1, 2020) (citing SSR 96-9p at *7 (comparing situations where a cane would and would not erode the occupational base)).

In determining whether a claimant has demonstrated that the use of a cane is "medically required," the ALJ "must always consider the particular facts of a case." SSR 96-9p. SSR 96-9p provides examples to guide the ALJ's consideration: if the cane is "needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." *Id.* If the individual needs to use a cane because of an impairment affecting one lower extremity or to reduce pain when walking, but has no other functional limitations, then that individual may still be able to adjust to sedentary work that exists in significant numbers. *Id.* But for an individual who requires a cane for *balance* due to significant involvement of both lower extremities because of a neurological impairment, the occupational base may be significantly eroded. *Id.* (emphasis added).

If a cane is not medically necessary, it cannot be considered an exertional limitation on the claimant's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). But a cane would be deemed medically necessary if the record reflects more than the claimant's subjective desire to use one. *Id.* In that situation, an ALJ is obligated to conclude that the cane is medically necessary and include such limitations in their analysis. *Simpkins v. Berryhill*, No. CV 17-43-DLB, 2017 WL 3821684, at *3 (E.D. Ky. Aug. 31, 2017); *Turk v. Comm'r of Soc. Sec.*, No. 1:20-CV-02157-JRA, 2021 WL 6755002, at *12 (N.D. Ohio Dec. 23, 2021), *report and recommendation adopted,* No. 1:20CV2157, 2022 WL 280454 (N.D. Ohio Jan. 31, 2022).

SSR 96-9p contains two requirements before an ALJ may conclude that a hand-held assistive device is "medically required." First, there must be medical documentation establishing the need for said device to aid in walking/standing; and second, the medical documentation must also "describ[e] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-

13

9p at *7. A claimant's contention that an assistive device is required does not satisfy SSR 96-9p's requirements without corresponding support in the medical record. *Parrish v. Berryhill*, No. 1:16-CV-1880, 2017 WL 2728394, at *11 (N.D. Ohio June 8, 2017), *report and recommendation adopted sub nom. Parrish v. Comm'r of Soc. Sec.*, 2017 WL 2720332 (N.D. Ohio June 23, 2017) (collecting cases). "An ALJ may thus find that a handheld assistive device is not medically necessary, even if a claimant regularly uses a cane, if the record evidence does not otherwise disclose the type of information SSR 96-9p requires." *Rutter v. Comm'r of Soc. Sec.*, No. 3:21-CV-01883-JGC, 2022 WL 4585897, at *15 (N.D. Ohio Sept. 2, 2022), *report and recommendation adopted*, No. 3:21-CV-01883, 2022 WL 4585808 (N.D. Ohio Sept. 29, 2022).

Cline points to various medical records that she argues establish that the use of a cane for balance was medically necessary. (ECF No. 8 at 19). In particular, Cline points to her prescription for a cane; the opinions of Drs. Stine and Carrabine who opined that Cline required a cane for ambulation and balance; Cline's treatment notes indicating use of a cane for imbalance and weakness; and Cline's history of falling due to muscle weakness and imbalance. (ECF No. 8 at 18–19). The Commissioner does not dispute that Cline had a prescription for a cane nor that her doctors opined that she required a cane. (*See* ECF No. 10 at 13 (acknowledging that Drs. Stine and Carrabine each opined that Cline must use and ambulatory aid)). This Court finds that Cline meets the first requirement in SSR 96-9p. Cline has a prescription for a cane, prescribed for her by neurologist Dr. Jennifer Drake in May 2019. (ECF No. 7-6, PageID #: 2086, Ex. B17E/1). In 2020 and 2023, respectively, Drs. Stine and Carrabine opined that Cline must use a cane for balance and ambulation while occasionally standing/walking. (ECF No. 7-7, PageID 3322, Ex. B27F/2; ECF No. 7-8, PageID #:5631, Ex. B55F/2). Although an ALJ is required only to include limitations supported by substantial evidence, Cline has produced documents demonstrating more than a

14

subjective desire to use a cane, and thus, failure to include a limitation for a use of a cane for balance may be error. *Austin v. Comm'r of Soc. Sec.*, No. 1:19-CV-2380, 2020 WL 9460505, at *13 (N.D. Ohio July 7, 2020), *report and recommendation adopted*, No. 1:19-CV-2380, 2021 WL 1540389 (N.D. Ohio Apr. 19, 2021); *Turk*, 2021 WL 6755002, at *12.

The Commissioner argues that the medical documentation does not meet the second SSR 96-9p requirement because it fails to describe the circumstances for which a cane is needed. (*See* ECF No. 10 at 13 (acknowledging that Drs. Stine and Carrabine each opined that Cline must use and ambulatory aid)). SSR 96-9p states that such explanations should include "whether [the assistive device is needed] all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." *See, e.g., Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018) ("Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p.") (Limbert, M.J.) (*citing Parrish*, 2017 WL 2728394); *Thacker v. Comm'r of Soc. Sec.*, No. 3:21 CV 1617, 2022 WL 3369533, at *3 (N.D. Ohio Aug. 16, 2022).

On February 27, 2020, Dr. Stine opined that Cline was limited to less than two hours of standing/walking and sitting in an eight-hour workday and that while occasionally standing/walking Cline required a cane due to imbalance, pain, and weakness. (ECF No. 7-7, PageID #: 3322, Ex. 27F/2). Similarly, on March 20, 2023, Dr. Carrabine opined that Cline was limited to less than two hours of standing/walking and sitting in an eight-hour workday and that while occasionally standing/walking, Cline must use a cane or other assistive device due to her muscle weakness, incoordination, spasticity, and imbalance. (ECF No. 7-8, PageID #: 5631, Ex. B55F/2). The Commissioner states that these opinions do not contain the language required by SSR 96-9p. Cline asserts that these opinions demonstrate that a cane was medically necessary

15

under the ruling. The problem here is that this Court cannot determine whether the ALJ considered Dr. Stine's and Dr. Carrabine's opinions that Cline required a cane for balance or analyzed whether the opinions meet the second requirement of SSR 96-9p because the ALJ did not discuss the opinions or SSR 96-9p in the decision.

This is not a situation where Cline's use of a cane was caused by an injury to one of her lower extremities. *See* SSR 96-9p at *7 ("an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers"). Here, each medical expert opined that Cline required the use of an assistive device for balance due to a significant involvement of both lower extremities. SSR 96-9p provides that the occupational base may be significantly eroded in situations where a neurological impairment causes the needs for a handheld device due to issues with balance. *Id*. ("the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded."). Dr. Stine noted Cline's ataxic gait, paresthesias, and leg weakness; Dr. Carrabine noted that Cline had an extreme limitation in her lower extremities, which included weakness and coordination and a marked limitation in her physical functioning caused by her neurological disorder - multiple sclerosis. (*See* ECF No. 7-8, PageID # 5630–2, Ex. B55F).

The ALJ does not specifically reference SSR 96-9p or provide a direct rationale as to why the cane is not necessary for balance. In the ALJ's listing analysis, she noted Cline's use of a cane for ambulation, her complaints of pain and weakness, and her antalgic or limping gait. (*See, e.g.*,

16

ECF No. 7-2, PageID #: 418 ("The record shows the claimant was prescribed a cane (B17E/1), but which prescription the claimant had requested (B18F/9). Treatment records describe episodes of cane usage and dependency (B32/5), (B41F/243), episodes of ataxic, slow, careful, gait without a cane (B46F/7), (B53F/3), and episodes of normal gait without assistive device (B9F/1, 35), (B16F/28, 44), (B40F/30), (B41F/269), (B44F/114), (B45F/5), (B48F/49), (B49F/36).)." The ALJ considered that "recent neurological records describe ataxia and a slow, cautious gait. [Cline's] current (B55F) and previous (B17E/1) [physicians] have indicated benefit from use of a cane." (*Id*. at PageID #: 428). Despite this potentially supportive evidence, the ALJ's decision did not explain why she omitted a cane for balance from Cline's RFC but included a cane for ambulation. "[W]here there is conflicting evidence concerning the need for a cane, 'it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.' " *Hess v. Comm'r of Soc. Sec.*, No. 1:20-cv-01599-JDG, 2021 WL 2815854, at *17 (N.D. Ohio July 6, 2021) (quoting *Forester v. Comm'r of Soc. Sec.*, No. 2:16-cv-1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017)); *see also Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) ("Our role is not to resolve conflicting evidence in the record..."); *Joanne L.*, 2022 WL 16757031, at *7 (Competing interpretations of the record are not instructive where an ALJ fails to discuss how the conflict in the evidence was resolved.). "Neither the Commissioner nor this court is permitted to engage in post hoc reasoning on the ALJ's behalf." *Austin*, 2020 WL 9460505, at *13 (citing *Steckroth v. Comm'r of Soc. Sec.*, 2012 WL 1079544, 2012 U.S. Dist. LEXIS 44895 (E.D. Mich. March 30, 2012), quoting *Hyatt Corp v. NLRB*, 939 F.2d 361, 367 (6th Cir. 1991) ("Courts are not at liberty to speculate on the basis of an administrative agency's order.... [nor is the court] free to accept 'appellate counsel's rationalization for agency action in lieu of reasons and findings enunciated by the Board.' ") (citations omitted)).

An ALJ's finding that a cane or other assistive device is not medically necessary may be error when: "(i) the claimant has a prescription for an assistive device; (ii) the ALJ does not include the use of the assistive device in the RFC; and (iii) the ALJ does not provide an explanation for the omission." *Rutter*, 2022 WL 4585897, at *15 (citing *Austin*, 2020 WL 9460505 at *13). It appears that Cline satisfied both the requirements of SSR 96-9p, as well as the three-part test described in *Austin*. Cline has a prescription for a cane, prescribed for her by neurologist Dr. Jennifer Drake in May 2019. (ECF No. 7-6, PageID #: 2086, Ex. B17E/1). In 2020 and 2023, respectively, Drs. Stine and Carrabine opined that Cline must use a cane while occasionally standing/walking. (ECF No. 7-7, PageID 3322, Ex. B27F/2; ECF No. 7-8, PageID #:5631, Ex. B55F/2). The ALJ incorporated the use of a cane for ambulation into the RFC but declined to incorporate use of a cane for balance into the RFC. Importantly, the ALJ did not explain her decision not to include a cane for balance into the RFC.

There are the only two mentions of Cline's issues with balance in the decision, each time only in passing. In the ALJ's analysis of the state agency opinions where she found that Cline was more severely limited than the state agency consultants opined,[2] the ALJ stated: "Given her reports of imbalance, stooping and crouching should be reduced to occasional." (ECF No. 7-2, PageID# 428). Earlier in the decision, the ALJ noted Cline's complaints about imbalance: "The clamant [sic] has described multiple falls (B4E/1), fatigue and imbalance (B32F/2), which she ascribes to multiple sclerosis (B6A/2), . . . causing deficits of her ability to lift, squat, bend, stand, walk, kneel, and climb (B4E/6)." (*Id*. at PageID #: 422–3). The ALJ does not mention Dr. Stine's or Dr.

---

[2] This Court also notes that the state agency opinions were dated April and June of 2019. These opinions lack any reference to Cline's use of a cane, precede the opinion of Dr. Stine by nearly a year and the opinion of Dr. Carrabine by nearly four years, and do not mention the May 3, 2019, prescription for a cane due to Cline's multiple sclerosis. (*Compare* ECF No. 7-3, Exs. B6A and B8A *with* ECF No. 7-7, Ex. B27F and ECF No. 7-8, Ex. B55F).

18

Carrabine's opined limitation as to Cline's need to use a cane for balance or their descriptions of when or why a cane is necessary. Additionally, the decision makes no mention of SSR 96-9p or its requirements. The ALJ does not discuss Cline's own testimony regarding her need for an assistive device, nor the additional medical documentation describing Cline's issues with balance and lower extremity weakness. After mentioning Cline's history of imbalance, the ALJ merely limited Cline's sedentary work to occasional stooping, kneeling, crouching, crawling, climbing ramps and stairs but never climbing ladders, ropes, or scaffolds. (*Id.*, PageID #: 422, 428). This is problematic because the ALJ remained silent as to why the cane was necessary for ambulating but not for balancing. See *Joanne L.*, 2022 WL 16757031, at *8 (remanding for further analysis where the ALJ concluded that claimant required a cane for ambulation but was silent on why a cane is not also needed for balance where claimant had provided evidence that a cane was required for both ambulation and balance). Although the ALJ was aware of Cline's use of a cane and balance issues, the ALJ's brief mentions regarding Cline's use of a cane provide insufficient articulation for the Court to determine the ALJ's reasoning in declining to incorporate use of a cane for balance in the RFC. *See Humenik v. Comm'r of Soc. Sec.*, No. 1:24-CV-00636, 2024 WL 4893931, at *8 (N.D. Ohio Nov. 26, 2024)(remanding where the ALJ not address SSR 96-9p factors or explain why claimant's cane usage was excluded from the RFC and claimant produced medical source opinions regarding claimant's reliance on a cane); *see also Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) ("Because the ALJ did not provide an analysis that is sufficiently specific, [Plaintiff's] argument that the ALJ failed to properly articulate the RFC calculation is well-taken. The Court is unable to trace the path of the ALJ's reasoning.")

"[A]n ALJ's error in either failing to include a use-of-a-cane limitation in the RFC or in explaining why he found it unnecessary is harmless when the claimant cannot show that the

19

ultimate determination – that there were a significant number of available jobs – would have been different had such a limitation been included." *Austin,* 2020 WL 9460505, at *14 (citations omitted). Here, the ALJ's hypothetical to the vocational expert addressed a use-of-a-cane for ambulation limitation but did not address whether there would be jobs available if the individual also required a cane for balance. (*See* ECF No. 7-2, PageID #: 1396–98). It is unclear whether Cline would have been able to perform the jobs relied on by the ALJ at step five if she required a cane both for ambulation and balance. Accordingly, the ALJ's failure to include the limitation or explain her decision not to include a cane for balance in the RFC was not harmless error.

I therefore recommend that the District Court remand for the ALJ to reassess Cline's RFC with instruction to consider Drs. Stine's and Carrabine's findings regarding Cline's use of a cane for balance, articulate the reasoning for the RFC determination, and obtain vocational expert testimony to determine the effect such a limitation would have on the occupational base.

## VI. Recommendation

Following review of the arguments presented, the record, and the applicable law, this Court recommends that the District Court REVERSE the Commissioner's decision denying social security benefits and REMAND this matter for proceedings consistent with this recommendation.

Dated: March 18, 2025

> s/ *Carmen E. Henderson*
> CARMEN E. HENDERSON
> U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).